**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**UNITED STATES OF AMERICA**

**vs.**                                          **3:05cr99/LAC
                                                  3:08cv451/LAC/MD**

**JOHN HOANG CAO**

---

### REPORT AND RECOMMENDATION

   This matter is before the court upon an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 516). The government has filed a response (doc. 527) and the defendant has filed two replies (doc. 552 & 553).[1] The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.


### BACKGROUND

   On September 22, 2005, defendant and fifteen others were charged in a single count indictment with conspiracy to possess with intent to distribute a mixture or substance containing 3,4-Methylenedioxymethamphetamine ("MDMA") and 5

---

[1]The first submission was hand written. The second submission was typed and included a rebuttal affidavit. The court has reviewed the content of both submissions.

kilograms or more of cocaine from on or about July 1, 2002 through the date of the indictment, in violation of 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(C) and 846. (Doc. 57). Defendant and two others were also charged by information in case 3:05cr101/LAC with conspiracy to commit money laundering in violation of title 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i) and 1957. Defendant was initially represented by appointed counsel Christopher Rabby, who withdrew when defendant retained Edward Brian Lang. Mr. Lang entered a notice of appearance on September 30, 2005.

On October 5, 2005, less than two weeks after his indictment, the defendant waived his right to be indicted in case 3:05cr101/LAC and entered a plea of guilty pursuant to a single written plea and cooperation agreement that applied in both cases. (Doc. 143). Defendant and his attorney signed the agreement on September 30, 2005, the date Mr. Lang had entered the notice of appearance, and Assistant United States Attorney Thomas P. Swaim signed it on October 5, 2005. (Doc. 143 at 8). The plea agreement was fairly standard for this district. With respect to the specific facts, it stated that defendant did not contest that the conspiracy involved in excess of 70,000 pills of MDMA and in excess of 5 kilograms of cocaine in the Northern District of Florida alone, but that the amount for which defendant was personally responsible would be reserved for sentencing. (Doc. 143 at 3). On September 27, 2005, before the entry of this defendant's plea, the government filed a separate statement of facts that referenced all of the guilty pleas entered by the various defendants in this case and set forth the facts relating to each defendant in a single incorporated affidavit authored by Special Agent Johnson. (Doc. 99, see pp. 8-9).

The probation officer determined that defendant should be held accountable for 19,000 kilograms of marijuana under the Drug Equivalency Table. (PSR ¶ 42). Defendant had a base offense level of 36, a two level upward adjustment due to a co-conspirator's possession of firearms in furtherance of the conspiracy and a four level adjustment for his role as an organizer or leader of a criminal activity involving

five or more participants. (PSR ¶ 69). The probation officer also applied a two level increase pursuant to § 2S1.1(b)(2)(B) due to his money laundering conviction. (PSR ¶ 70). Despite his guilty plea, he was not afforded an acceptance of responsibility adjustment due to his attempt to minimize the degree of his involvement when speaking to the probation officer. (PSR ¶¶ 66 & 74). His total offense level was 44, beyond the upper end of the sentencing guidelines table, a level which would subject him to a term of life imprisonment despite his lack of any criminal history whatsoever.

Retained counsel Nicole Kessler Ferry entered an appearance on defendant's behalf on November 21, 2005. (Doc. 189).[2] She moved to continue the sentencing set for December 20, 2005, but the motion was denied, although she was afforded additional time to make objections to the PSR. (Doc. 196 & 201). Ms. Ferry objected to the failure to grant defendant an acceptance of responsibility adjustment, to the quantity of drugs attributed to the defendant, to the two level increase for the co-conspirator's possession of a dangerous weapon, and to the lack of downward adjustment for his allegedly less culpable role in the offense. She also argued that absent the filing of a 5K1 motion defendant was entitled to a downward departure pursuant to § 5K2.0.

Counsel then filed a motion to set bond, which was withdrawn after the government objected. (Doc. 203, 204 & 206). In her motion to withdraw, counsel noted that the filing of the motion had actually had or might have a detrimental effect on defendant's potential to receive substantial assistance motion from the government. (Doc. 206).

---

[2]Defendant John Hoang Cao signed a "waiver of conflict of interest" indicating that he voluntarily waived any conflict that may exist in Nicole Kessler Ferry's dual representation of him and Quoc Le. (Doc. 277). A more thorough and complete waiver was filed in open court during proceedings held in case 3:05cr116 on January 18, 2006. (Doc. 291 & 444).

The government moved to continue the sentencing in order to ensure the presence of a critical witness, Hai T. Nguyen, and sentencing was continued until January 6, 2006, and then reset for January 17, 2006.  (Doc. 222, 223 & 255).

Defense counsel moved for issuance of writ of habeas corpus ad testificandum for Peter Hoang.  (Doc. 253 & 257).  She also filed a second motion for bond, which was denied  (doc. 254 & 278) and a second motion to continue sentencing (doc. 262) based on the representation of counsel for Hai T. Nguyen that his client would invoke his Fifth Amendment rights if he was called to testify before the conclusion of his own criminal proceedings.  (Doc. 262).  Counsel amended this motion to note that counsel for Mr. Nguyen was unable to appear at the scheduled time (doc. 283), and she also filed a motion to take Mr. Nguyen's deposition which was denied (doc. 275 & 290).  The motion to continue was denied (doc. 310) and sentencing began on January 17 and was continued until January 26, 2006.  (Doc. 422 & 423).  At the commencement of the initial phase of the sentencing proceeding, the government announced that it would stipulate that Hai Nguyen had retracted "every bad thing [he had] ever said" about the defendant.  (Doc. 422 at 9-10).

In the interim, the government filed a motion in limine to exclude the testimony of three individuals:  Hai Nguyen's attorney Martin Regan; a polygraph examiner who allegedly conducted a polygraph examination of the defendant; and Lisa Cao, defendant's wife,[3] (doc. 293 & 298), each of whom purportedly would have offered evidence in mitigation at defendant's sentencing.  The motion was granted in part. (Doc. 316).

At the final phase of the sentencing hearing, the court overruled the objections to defendant's role in the offense and the firearm adjustment, as well as the amount of drugs and the denial of the acceptance of responsibility adjustment. (doc. 423 at 104-106).  Due to grouping considerations, defendant's total offense level was 42.

---

[3]Lisa Nguyen is actually defendant's "common-law wife" according to her affidavit, filed in support of the § 2255 motion.  (Doc. 516, exh. C).  Future references to defendant's wife are to Ms. Nguyen.

(Doc. 423 at 114-117). The court imposed a sentence of 480 months in case 3:05cr99 and a concurrent sentence of 240 months in the money laundering case, 3:05cr101. (Doc. 423 at 119).  It also imposed a fine of eight hundred dollars, a two hundred dollar special monetary assessment and concurrent terms of five and three years of supervised release, respectively.

Defendant  moved  to grant post-sentence release and to allow his surrender at his designated facility.  (Doc. 313).  This motion was denied.  (Doc. 317).

On February 2, 2006, defendant filed a notice of appeal and Ms. Ferry moved to withdraw based on defendant's retention of Phillip Horowitz to represent him. (Doc. 334 & 335).  The motion was denied until and if Mr. Horowitz filed a notice of appearance (doc. 353), which he did on April 13, 2006.  (Doc. 407).

On appeal the defendant argued that the district court erred in calculating his offense level under the Sentencing Guidelines by (1) imposing a four-level adjustment for his leadership role (2) assessing a two-level adjustment for possession of a firearm; and (3) relying on hearsay to determine drug quantity.  He also argued that his sentence was unreasonable under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  The Eleventh Circuit Court of Appeals affirmed defendant's conviction and sentence on March 13, 2007.  (Doc. 469).  Defendant filed a petition for writ of certiorari with the United States Supreme Court on June 5, 2007, which was denied on October 1, 2007.  (See doc. 516, memo at 6)

In the instant motion, defendant assails the performance of retained attorneys Lang and Ferry, raising five claims of ineffective assistance of counsel.  He also contends that the AUSA unconstitutionally refused to file a substantial assistance motion in retaliation for his having exercised his right to challenge sentencing issues, and that cumulative error tainted the proceedings against him.  The government opposes the motion in its entirety.

## LEGAL ANALYSIS

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Thomas v. United States,* 572 F.3d 1300, 1304 (11th Cir. 2009); *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously

raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d 1324 (11th Cir. 2010); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir.

2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).

Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir.

2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

## B.  Defendant's specific claims for relief

### Ground One

Defendant first contends that attorney Brian Lang conducted no pretrial investigation  in his behalf and as such he failed in his constitutional duty to make reasonable investigations.  *Wiggins v. Smith*, 539 U.S. 510, 521-522, 123 S.Ct. 2527, 2535-2536, 156 L.Ed.2d 471 (2003).  Defendant asserts that besides the government agent's affidavit in support of the complaint in the drug conspiracy case, Lang neither sought nor received any investigative reports or other discovery that would have aided a preliminary investigation of the case against the defendant, and that Lang failed to request disclosure of documents under Fed.R.Crim.P. 16(a)(1)(E) and Local Rule 26.3.  Defendant asserts that Lang's failure to investigate means that counsel was not informed of facts essential to the plea-bargaining and sentencing process.  Lang was allegedly unprepared during the plea bargaining process.  According to the defendant, for this reason the government's boilerplate plea document went unchallenged and unchanged.

Defendant's initial appointed counsel, Christopher Rabby has submitted an affidavit in reference to the defendant's motion.  (Doc. 527, exh. A). In his affidavit he states that he requested and received the initial discovery response from the government on September 20, 2005, the date of his appointment.  *Id.*  He also met with the defendant on that date and for over two hours they reviewed the criminal complaint and took a look at the discovery  materials provided by the government. (*Id.*)  The following day, Mr. Rabby met with the defendant for another hour to review discovery materials.  All of these materials were given to subsequent counsel, Brian Lang on September 28, 2005.  At that time, Mr. Rabby states that he and Mr. Lang discussed the discovery, the facts of the defendant's case and the strength of the government's case against the defendant.   (*Id.*).

In  Mr. Lang's affidavit, he confirmed that he had obtained Mr. Rabby's complete filed on the defendant.  (Doc. 527, exh. B).   He also attaches an email dated September 28, 2005 from AUSA Swaim by which Mr. Swaim forwarded copies of the indictment, criminal information, waiver of indictment, proposed plea agreement and the factual summary in support of guilty plea, with attachments. (Doc. 527, exh. B(4)). Mr. Lang states that when he met with his client, the defendant immediately indicated that he wished to cooperate with the government and enter into the Plea and Cooperation Agreement as soon as possible.  Thus, defendant signed the agreement on September 30, 2005.

To underscore the rapid progression of this case, the following timeline is presented:

| | |
|---|---|
| 9/14/05 | Complaint filed, case 3:05cr99 (doc. 1) |
| 9/15/05 | Defendant ordered temporarily detained (doc. 19) |
| 9/20/05 | CJA appointment of Christopher Rabby (doc. 31) |
| 9/22/05 | Indictment (doc. 57) |
| 9/24/05 | Order of detention (doc. 64) |
| 9/24/05 | Christopher Rabby enters notice of appearance (doc. 79) |

**9/27/05**      **Factual summary in support of guilty pleas (doc. 99)[4]**

**9/30/05**      **Edward Brian Lang enters notice of appearance (doc. 124)**

**10/5/05**      **Change of plea hearing (doc. 142, 143)**

 

      **Less than a month elapsed between the time the defendant was arrested and he entered his plea of guilty, less than two weeks elapsed between the indictment and his guilty plea, and less than one week elapsed between Mr. Lang's notice of appearance and the rearraignment.   The basis for defendant's assertion that Mr. Lang did not perform an investigation in the short time he was counsel of record is unclear.   Defendant does not dispute that Mr. Lang received discovery materials from former counsel, the government or both.   Defendant has not explained what additional investigation Mr. Lang could or should have undertaken that would have altered the outcome of his case.   Thus, he has failed to show prejudice under *Strickland* and he is not entitled to relief.**

 

      <u>**Ground Two**</u>

      **Defendant next asserts that even if the court finds that Lang conducted appropriate pretrial/preplea investigation, attorney Lang's performance was deficient in that he failed to consult with the defendant during the course of plea negotiations and failed to adequately protect his interests in negotiating and drafting the plea agreement.  Thus, the resulting agreement, according to the defendant, favored only the government.   Defendant claims that he "would never have signed the plea agreement in this case had he known in advance that attorney Lang had failed to adequately protect his legal interests within the agreement concerning drug amount,**

---

[4]The government characterizes the public filing of this document, which contained an 84 page affidavit from the DEA case agent and a color organizational chart and detailing the strength of the government's case and its theory of prosecution as "locally unprecedented" but "necessary because there was a stampede of co-defendants clamoring to plead guilty. (Docs. 69, 101, 105, 107, 111, 113, 115, 162, 122, 134, 135)." (Doc. 527 at 16).

role in offense, weapons enhancements, acceptance of responsibility, and equitable terms within the cooperation clause of the agreement."

Claims such as this easily lose their momentum after a review of the plea colloquy. Before accepting a guilty plea, the district court always explains the potential penalties faced by the defendant, even if those are set forth in the written plea agreement. This case was no exception. When questioned by the court, defendant acknowledged that he and his attorney had discussed the advisory sentencing guidelines, and that he knew he would not be able to withdraw his plea if the sentence turned out to be more or greater than what he expected. (Doc. 421 at 20-21, 22, 24). The plea agreement, as noted above, provided that the amount of drugs attributable to the defendant was an issue reserved for sentencing. (Doc. 143 at 3). With respect to defendant's role in the offense, counsel brought to the court's attention that the defendant did not agree with the government's description of the expansive role he allegedly played in the offense, although resolution of the precise extent of defendant's role was unnecessary to the acceptance of defendant's guilty plea. (Doc. 421 at 19). The remaining matters of which defendant now complains were investigated and determined during the probation officer's preparation of the PSR. Defendant's legal interest was in having a factually accurate PSR, and being able to contest these matters. The plea agreement did not restrict the defendant's ability to contest any issue at sentencing, and in fact, the district court noted that defendant "denie[d] and contest[ed] everything." Plea agreements in this district are virtually standard, with little variation. The recognized benefit to a defendant in entering a plea are avoiding a trial which affords greater likelihood of an acceptance of responsibility adjustment and the possibility of cooperating with the government. The defendant has not identified any specific areas of deficiency in counsel's performance with respect to negotiation of his plea agreement, and he is not entitled to relief.

### Ground Three

Defendant claims that Attorney Lang used coercion and threats to induce the defendant's guilty plea. Defendant notes that he entered his guilty plea less than three weeks after his arrest, and that prior to this proceeding he had no criminal record and thus no experience with the criminal justice system. Because of this, he relied on counsel to explain and interpret everything for him. He said that counsel took advantage of his inexperience with the system, and met with him a single time for only five minutes, during which he assured the defendant that all of his concerns would be fought at sentencing. (Doc. 516, exh. B at ¶ 8). Defendant states that it was during this brief meeting that counsel produced the plea agreement and instructed the defendant to sign it, because the only way he "would survive this thing" was to cooperate. Defendant complied and signed the agreement based upon counsel's representation. He did not see his attorney again until the plea hearing,[5] at which time counsel told him that he had to plead guilty and that not doing so would result in defendant receiving a life sentence. Defendant, who by this point had already signed the plea agreement, now asserts that he became confused and tried to express his shock and confusion over what counsel was telling him to his wife and her sister who were among the spectators. Lang then went to speak to the defendant's wife, which resulted in her telling the defendant to "just plead guilty" (Doc. 516, exh. C and D, affidavits of Lisa Nguyen and Heather Wessel).

Defendant states that the mere fact that the transcript of the plea colloquy evidences the supposed voluntariness of his plea does not protect it from collateral attack because the sole reason he pleaded guilty was that Lang told him that not doing so would result in him receiving a life sentence. Lang, he asserts, engaged in "scare tactics to induce defendant's guilty plea." (Doc. 516, memo at 22). He states that counsel failed "to explain even a general outline of the federal sentencing process and how that process might work under the facts of defendant's case." (*Id.*

---

[5]This was only five days later.

at 23). Finally, defendant asserts that his guilty plea was involuntary because he was not fairly apprised of the consequences of the plea or alternatively, was threatened with "the unthinkable"–a life sentence– if he did not tender his plea.

This claim fails for two reasons. First, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). In this case, the attorney who allegedly coerced the defendant's guilty plea was not the same attorney who represented defendant either at sentencing or on appeal. Thus, there would have been no reason for this claim to have been disregarded by counsel on direct appeal.

Even if the claim was not procedurally barred, defendant's assertions are squarely contradicted by his testimony at the plea colloquy and the district court's findings in this regard. It is well established that in accepting a guilty plea, a court

must ensure (1) that the defendant's guilty plea is voluntary and free from coercion; (2) that the defendant understands the nature of the charges; and (3) that he understands the direct consequences of his guilty plea. *Gordon v. United States,* 518 F.3d 1291, 1298 (11th Cir. 2008) (citing *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003)). An allegation of a coerced plea, supported by a factual allegation, under some circumstances can support a §2255 motion. *See Fontaine v. United States*, 411 U.S. 213, 214-15, 93 S.Ct. 1461, 1462-63, 36 L.Ed.2d 169 (1973); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Jones v. White*, 992 F.2d 1548 (11th Cir. 1993); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629; *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion....include credible, valid reasons why a departure from those earlier contradictory statements is now justified.")*; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing *Blackledge* and other cases); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)). Consequently, a defendant

"bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *United States v. Green*, 2008 WL 1923102 (11th Cir. 2008) (Table, text in WESTLAW); *United States v. Cardenas*, 230 Fed.Appx. 933, 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)).

The Eleventh Circuit has also held that courts should be skeptical of late, and especially post-sentencing, challenges to guilty pleas, and courts should strongly guard against permitting defendants to use "the guilty plea as a means of testing the weight of a potential sentence." *Gonzalez-Mercado*, 808 F.2d at 801; see also *Blackledge*, 431 U.S. at 71-72, 97 S.Ct. at 1628 (noting that guilty pleas are to be accorded a great measure of finality because more often than not a defendant has "everything to gain and nothing to lose" by attacking his plea.) After all, a guilty plea means something. It is not an "invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998).

Defendant's current allegations are precisely the sort of allegations which Federal Rule of Criminal Procedure 11 is designed to preempt. See *Fontaine*, 411 U.S. at 215, 93 S.Ct. at 1463. The record reflects that defendant was specifically advised at rearraignment that if the court accepted his plea he would not be able to change his mind and withdraw the plea later. (Doc. 421 at 15). He stated, under oath, to the district court that no one had "threatened or forced or pressured or intimidated" him "in any way" to make him plead guilty. (Doc. 421 at 28). He acknowledged that he had had time to discuss his case with Mr. Lang, had told counsel everything he knew about the facts of the case, was satisfied with counsel's representation of him and had no complaints about counsel's treatment of him.

(Doc. 421 at 28-29). When given the carte-blanche opportunity to change, add to or modify any of his answers, the defendant declined to do so, and counsel did not indicate that any further inquiry needed to be made. (Doc. 421 at 29-30).

Defendant has now presented several affidavits in support of his allegations that there is more to this story than what appears to have transpired based on the transcript of the plea colloquy. In his own affidavit, defendant states that on October 5, 2005 when he was transported to the plea hearing he had no prior notice of the hearing and in fact did not know what a "change of plea" was as he had not been counseled by his then-attorney Mr. Lang before the proceeding. (Doc. 516 exh. B at 2). He asked counsel what was going on, and counsel told him he "had to plead guilty" to the charges or he would receive a sentence of life imprisonment. Defendant told counsel that some of the information provided by Hai Nguyen to law enforcement was inaccurate, and he did not understand why he was in court to plead guilty to charges for which he was not guilty. Mr. Lang allegedly reiterated that defendant would likely receive a life sentence if he did not plead guilty, and that they would deal with the contested issues at sentencing. (*Id.*)

Defendant asserts that at no time did Lang ever confer with him about the details of the charges against him, he did not review discovery materials, and he did not investigate defendant's persistent claim of "innocence."[6] Counsel also did not explain the sentencing guidelines or the consequences of defendant's guilty plea other than to tell him that if he did not enter a guilty plea, he would receive a sentence of natural life.

Defendant states that while he was in court, he attempted to communicate with his wife, Lisa Nguyen, telling her he was being threatened with a life sentence if he did not plead guilty and that he did not know what to do. (*Id.* at 3). Mr. Lang

---

[6]Defendant has admitted his involvement in the charged conspiracy. Thus there is no basis for a claim of total "innocence."

went to speak briefly with Ms. Nguyen, who shortly thereafter instructed defendant to "just plead guilty." (*Id.*)

Finally, defendant asserts that Lang told him that his cooperation with law enforcement would result in a reduced sentence, and he understood "cooperation" to mean merely that he had to enter a guilty plea.[7]

As a possible explanation for the contradiction between the statements made at the plea proceeding and the statements he now makes, defendant states that at his rearraignment he was "confused, frightened, in a state of shock, and acted not of [his] own free will, but based upon the threat . . . of a life sentence, and because of the pleading of [his] crying wife." (Doc. 516, exh. B at 4).

Defendant claims that after this hearing he did not speak to Mr. Lang again, but retained Nicole Kessler Ferry. He told Ms. Ferry that he was "not guilty of the allegations made against [him] by the government." (Doc. 516, exh. B at 4). He requested that they review the government's discovery together so he could explain his situation and "point out where the government was exaggerating [his] involvement in the alleged drug conspiracy." (*Id.*) Clearly, defendant was not denying all involvement in the conspiracy, rather he merely denied the *extent* of the involvement claimed by the government. (See also *id.* at 4-5). Ms. Ferry told the defendant, as had Mr. Lang, that the drug amount, guns and his role in the conspiracy were details that would be worked out at sentencing.

Contrary to his statement at the rearraignment, defendant now claims that it was not until well after he pleaded guilty that he was provided with an explanation of how the sentencing guidelines worked and how they might be applied in his case. (Doc. 516, exh. B at 5). Defendant also claims that had he been cognizant of the consequences of his guilty plea, he would never have pleaded guilty but would have

---

[7] Defendant's recollection is suspect, as this assertion is flatly contradicted by defendant's statements at sentencing where he indicates that he has "tried to participate as best [he] can in helping to end all this by cooperating with the Government and law enforcement by agreeing to testify for United States prosecutors in order to assure future convictions of others who participate in this type of crime." (Doc. 423 at 110-111).

insisted upon proceeding to trial.  This assertion, in light of his admission of guilt and the wealth of evidence against him may evidence post-sentencing remorse rather than an accurate depiction of his state of mind at the time.

Defendant's common-law wife, Lisa Nguyen has also submitted an affidavit. She states that before the October 5 hearing, Mr. Lang approached her and told her that defendant was confused about the nature and consequences of the court proceeding and needed Ms. Nguyen's "advice" concerning his change of plea. (Doc. 516, exh. C at 2).  She stated that Lang advised her that if defendant did not plead guilty he would likely receive a natural life sentence.  (*Id.*)  As a result, she became fearful and confused and told Lang to tell the defendant "just plead guilty."  (*Id.*). Ms. Nguyen states that at no time did anyone from the defense team interview her with respect to the veracity of the government's allegations or her knowledge of his activities during the time they were together.  Had she been asked, Ms. Nguyen says that she would have stated under oath that she had never known defendant to be involved with buying or selling illegal controlled substances.  (*Id.*)[8]

The last affidavit is from Heather Wessel, Ms. Nguyen's sister in law, who also attended the October 5 hearing and who observed the conversation between Mr. Lang and Ms. Nguyen.  (Doc. 516, exh. D).  Ms. Wessel heard Lang tell Ms. Nguyen that if defendant did not plead guilty, he would likely receive a life sentence.  (*Id.* at 2).    Ms. Wessel observed that Ms. Nguyen was "visibly shaken" after this conversation, and observed her instruct Lang to tell the defendant to "just plead guilty."  (*Id.*).

In his reply, the defendant suggests that the reason he responded to the court's questioning as he did was that Mr. Lang whispered in his ear that he should answer the court's questions in the affirmative.  (Doc. 553 at 6, exh. A at 1); compare *United States v. Curbelo*, 259 Fed.Appx. 302, 307 (11th Cir. 2007) (attorney reviewed

---

[8]Ms. Nguyen's lack of knowledge of the defendant's criminal activities is clearly not exculpatory in light of his own admission of guilt.

likely plea-colloquy questions, telling his client to "respond truthfully."). Defendant points to pages 28 through 30 of the plea colloquy where the court is finalizing its questioning of the defendant, and he briefly confers with counsel.

THE COURT: Have you been threatened or forced or pressured or intimidated in any way to cause you to enter the plea here today?

THE DEFENDANT: No, sir.

THE COURT: And you are represented by Mr. Lang that is with you here today; have you had sufficient time to discuss your case fully with him?

THE DEFENDANT: No, sir.

MR. LANG: No?

THE COURT: You have not discussed with him, told him everything, anything else that you need to tell him about the case?

THE DEFENDANT: Oh, no, nothing.

THE COURT: So have you had the time to discuss your case with him?

THE DEFENDANT: (Confers with Mr. Lang).

MR. LANG: Yes?

THE DEFENDANT: Yes. Yes, I have.

THE COURT: You are satisfied with the discussions that you have had?

THE DEFENDANT: Yes, sir.

THE COURT: And you have told him everything that you know about the facts of the case?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with Mr. Lang and the representation that he has provided for you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any complaint at all about the way he has treated you or the way anyone from his office has treated you during his representation?

THE DEFENDANT: Yes, sir, that's good.

THE COURT: Do you have any complaint?

THE DEFENDANT: No. No. No.

THE COURT: Do you have any questions of me about anything that we have discussed here this morning?

THE DEFENDANT: No, sir.

THE COURT: Any of my questions, any of your answers that you might want to change or add to or modify in any way at all?

THE DEFENDANT: No sir.

(Doc. 421 at 28-30). Although defendant suggests that after conferring with Lang, he robotically answered the court's questions in the affirmative, the transcript shows that this is not the case. As shown above, when offered the opportunity to change his answers to any of the questions he had previously answered, he declined to do so. He did not attempt to make any of his alleged concern or confusion known to the court or ask for additional time or explanation. The defendant states in his reply that the government has not carried its burden of showing that attorney Lang was not ineffective. (Doc. 553 at 7). Actually, defendant misstates the burden. It is not the government's burden to prove that Lang was not ineffective, it is incumbent upon the defendant to prove that he was. This he has failed to do. If defendant chose to plead guilty pursuant to a plea and cooperation agreement in order to avoid a life sentence, having received the benefit of this bargain he cannot now assail the plea because of his dissatisfaction with the admittedly lengthy sentence he received. He has not shown just cause to disregard the sworn statements he made at the pleas proceeding, *Blackledge, supra*, and he is not entitled to relief.

## Ground Four

Defendant contends that his third attorney, Nicole Kessler Ferry, was constitutionally ineffective because she failed to file a motion to allow the defendant to withdraw his guilty plea. Defendant states that once he realized that he had been

"duped" by Lang into pleading guilty, he dismissed Lang and retained Ms. Ferry.  At their first meeting in November of 2005, defendant states that he told Ferry that he was "not guilty of the allegations made by the government."  He asserts that this, combined with the lack of evidence of Lang's investigation and a plea and cooperation agreement that was facially "insufficient to protect defendant's legal interests and contained legal impossibilities" all should have been signs to Ms. Ferry that defendant's guilty plea should be withdrawn.  Defendant also points to the court's statement made in conjunction with denying defendant the benefit of an acceptance of responsibility adjustment "it's hard to say he accepted responsibility when he denies and contests everything."   (Doc. 423 at 105-106).

Ms. Ferry's affidavit presents a different version of events.  She indicates that she and her client discussed the possibility of his moving to withdraw his plea, but states that defendant specifically instructed her not to file a motion to withdraw his plea every time the subject was discussed.  (Doc. 527, exh.  C).  After their discussions, defendant believed that "strategically speaking, it was better to move the Court toward a lesser sentence in the sentencing phase" rather than file a motion to withdraw the guilty plea.  (Doc. 527, exh. C).  In defendant's counter affidavit, filed with his reply, he states that Ms. Ferry's sworn statement "is a lie," that he instructed her to file a motion to withdraw his plea and never told her not to do so. (Doc. 553, exh. A at 2).

Clearly, if, after consultation with counsel, defendant did not wish to pursue an attempt to withdraw his guilty plea, counsel's performance was not constitutionally deficient for failing to move to withdraw the plea.  However, even if the court were to find that she had failed to make the motion upon defendant's request, her failure to make this motion is not constitutionally ineffective unless

defendant can show prejudice, that is, had she done so, that the motion would have been granted and the outcome of the proceedings would have been different.[9]

Under the Federal Rules of Criminal Procedure,  a defendant may withdraw a guilty plea after the court accepts the plea but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B).  The burden is on the defendant for establishing this reason.  See *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1998).  Although this portion of the rule is to be liberally construed, "there is no absolute right to withdraw a guilty plea prior to the imposition of sentence," and "[t]he decision to allow withdrawal is left to the sound discretion of the trial court." *Id.*  As will be discussed further below, appellate review of the district court's decision is highly deferential. *Id.*

In assessing a motion to withdraw, the district court must consider the totality of circumstances surrounding the plea. *United States v. Brehm,* 442 F.3d 1291, 1298 (11th Cir. 2006) (citing *Buckles*, 843 F.2d at 471).  Factors to be considered include:

> (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved . . . and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.

*Brehm,* 442 F.3d at 1298 (citing *Buckles*, 843 F.2d at 472); *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003).  The trial court is tasked with weighing the good faith, credibility and weight of the defendant's assertions in support of his motion. *Id.*  And, the longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal. *Id.* (citing *Buckles*, 843 F.2d at 473).

With respect to the first factor, defendant now contends that he met with his retained attorney, Brian Lang, only five minutes before entering his guilty plea.  This

---

[9]Because of this, an evidentiary hearing to determine whether the defendant ultimately instructed counsel to file the motion to withdraw the guilty plea is not necessary.

does not meet the definition of "close assistance of counsel." See e.g. ***United States v. Anderson***, 2010 WL 2500347 (11th Cir. 2010) (defendant had close assistance of counsel where counsel was available to answer questions at plea hearing, met with defendant when first arrested as well as three or four times at jail, and discussed plea agreement with the defendant). However, this assertion contradicts defendant's statement at the rearraignment that he had had sufficient time to discuss his case with counsel. Defendant now attempts to explain the inconsistency between the two sworn statements by after-the-fact assertions that he merely answered yes to the court's questions out of fear or confusion, because of his crying wife, or in accordance with counsel's instruction. Even if this is true, he has not contested the affidavit of his initial appointed counsel Christopher Rabby, who stated that he met with the defendant for several hours to discuss the government's evidence and the strength of its case against him. (Doc. 527, exh. A). The court recognizes that counsel are not necessarily fungible. However, factual information about the strength of the government's case and the evidence it has against the defendant does not significantly change in weight depending on who presents it. Thus, the information discussed with Mr. Rabby logically would have played a part in the decision reached with Mr. Lang, even if he did not re-review with his second attorney the same information he had reviewed less than one week before. In balance, the question of whether defendant had the "close assistance of counsel" is neutral.

Defendant next asserts that his plea was not voluntary, because he entered the plea merely because of the "threat" from Lang about the sentence he would receive if he did not enter a plea. In order for a guilty plea to be knowing and voluntary, "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." ***United States v. Hernandez-Fraire***, 208 F.3d 945, 949 (11th Cir. 2000) (quotation omitted); ***United States v. Frye***, 402 F.3d 1123 (11th Cir. 2005). In this case it is the alleged coercion that was the subject of

ground three of the instant motion that is at issue. If attorney Lang coerced the guilty plea, this in and of itself is improper, and defendant would be entitled to withdraw the plea. However, this court found in the preceding section that the defendant's contradictory assertions did not overcome the formidable barrier of discrediting his sworn statements in open court, and thus the plea was not the product of improper coercion. Because the plea was voluntary, this factor weighs against permitting withdrawal of the plea. As further support for the fact that the defendant's plea was voluntary, the court has carefully reviewed the defendant's statement to the court at sentencing. The statement, which takes up almost three full pages of transcript, provides significant details concerning defendant's remorse and regret, but does not remotely suggest that the plea was anything other than voluntary, or that counsel had failed to move to withdraw the plea upon defendant's request.

With respect to the last two prongs of the test, judicial resources are typically conserved by entry of a plea, but only if that plea is not later subject to challenge. Finally, it does not appear that the government would have been unduly prejudiced by withdrawal of the plea. Because of the defendant's early guilty plea, the government presumably had not made significant progress in its preparation for trial, and this preparation ceased upon entry of the plea. Ms. Ferry did not file her notice of appearance until over six weeks after the defendant entered his plea, and likely would not have filed a motion to withdraw the plea for another week or more. Even so, it is unlikely that the government would have been at a loss for witnesses. There was a "stampede of co-defendants clamoring to plead guilty" (doc. 527 at 16), among whom, presumably, there would have been no shortage of witnesses willing and able to testify at trial in the hopes of a reduced sentence. Thus, the government would not have been hampered in its ability to bring the defendant to trial, and perhaps secure the life sentence defendant sought to avoid through entering his plea.

Based on the foregoing, the defendant has not met his burden of showing that counsel was constitutionally ineffective for failing to file a motion to withdraw his plea. The district court has ample discretion in ruling on a motion to withdraw a guilty plea. Had such a motion been filed, it would have been well within the court's discretion to deny it. The denial of a request to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291 (11th Cir. 2006) (citing *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003)). Only an "arbitrary or unreasonable" denial rises to the level of an abuse of discretion. *Id.* (Citing *United States v. Weaver*, 275 F.3d 1320, 1328 n.8 (11th Cir. 2001)). And, there is no abuse of discretion where the district court has conducted extensive Rule 11 inquiries prior to accepting the plea. *Id.* And, had the motion been filed and granted, based on the evidence and plethora of available witnesses in this case, it is not likely that the outcome of the proceedings would have been more favorable to the defendant.

<u>Ground Five</u>

Defendant complains that Attorney Nicole Ferry failed to locate and interview potential mitigation witnesses for sentencing. While he commends counsel's ultimately unsuccessful attempt to secure the testimony of Hai Nguyen, he notes that either Hai's brother Tim Nguyen or Hai's father Mai Nguyen could have shed light on whether the defendant used their home as a stash house. Such witnesses were unnecessary to counter any statements made by Hai Nguyen as the government stipulated at sentencing that Hai Nguyen had retracted every bad thing he said about the defendant. (Doc. 422 at 9-10).

Defendant also asserts that counsel had a duty to locate and interview Peter Hoang, Huy Tran, Chhon Iv and Jefferey Wessell, each of whom were allegedly members of the conspiracy and under defendant's supervision. He asserts that his relationship with these people was buyer/seller only, not the sort of relationship required to support a leadership role in the conspiracy.

Three of the four witnesses either testified for the government or were unavailable. Peter Hoang and Chhon lv both testified at sentencing as witnesses for the government and did not offer favorable testimony. (Doc. 422 at 93-134; doc. 423 at 62-103). Huy Tran was a fugitive at the time of sentencing, (doc. 423 at 29), so he clearly was unavailable. With respect to Jeffrey Wessel, Special Agent Johnson of the DEA testified generally about the organization of the charged conspiracy, and noted that the defendant exercised some leadership over Jeffrey Wessel as defendant was able to transfer title of a vehicle into Wessel's name while still maintaining possession of the vehicle. (Doc. 423 at 28-29). Defendant has offered no proof that Wessel was available to testify or that he would have testified favorably to him. See *Hembree v. United States*, 307 Fed.Appx. 412, 418 (11th Cir. 2009) (discussing *Fortenberry v. Haley*, 297 F.3d 1213, 1227-1228 (11th Cir. 2002). Defendant has not shown deficient performance or prejudice.

<u>Ground Six</u>

Defendant asserts as both a substantive claim and under the umbrella of ineffective assistance of counsel, that the Assistant United States Attorney violated his due process rights by refusing to file a substantial assistance motion in retaliation for the defendant exercising his right to challenge sentencing issues, a right that was clearly reserved by the plea agreement. (See doc. 143 at 3). Defendant claims that the government had no valid reason for not filing the 5K1 motion other than its assertion that defendant "is not cooperating." (Doc. 423 at 118).

This issue is both procedurally barred and without merit. As noted above, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998). Defendant's assertion that the

government's failure to file a 5K1 motion at sentencing was retaliatory in nature was certainly available to him on direct appeal. Even if it were not procedurally barred, he has not shown that his claim has merit.

The decision to file a 5K1 motion is a matter of prosecutorial discretion. *United States v. Nealy,* 232 F.3d 825, 831 (11th Cir. 2000), *cert. denied,* 122 S.Ct. 552, 151 L.Ed.2d 428 (2001); *United States v. Orozco,* 160 F.3d 1309, 1315 (11th Cir. 1998); *United States v. Forney*, 9 F.3d 1492, 1501 (11th Cir. 1993). The government has a power, not a duty, to file such a motion when a defendant has substantially assisted. *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992). Even plea agreements that require the government *to consider* whether the aid to the prosecution constitutes substantial assistance do not create a contractual duty to file a 5K1 motion. *Forney*, 9 F.3d at 1499-1500. Judicial review of a decision not to file a 5K1 motion is appropriate only where there is an allegation and substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion. *Wade*, 504 U.S. at 185-86, 112 S.Ct. at 1843-44, 118 L.Ed.2d 524; *United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009); *Nealy*, 232 F.3d at 831.

A defendant who merely claims to have provided substantial assistance or who makes only generalized allegations of an improper motive is not entitled to a remedy or even to an evidentiary hearing. *Wade,* 504 U.S. at 186, 112 S.Ct. at 1844). A defendant may be entitled to relief, however, if he shows that the prosecutor's refusal to file such a motion was "not rationally related to any legitimate government end." *Id*, 504 U.S. at 186, 112 S.Ct. at 1844.

Filing of a certification of substantial assistance generally signifies that the defendant's assistance has yielded actual, useful results, not merely that the defendant made a substantial good faith effort in his attempts to assist. *See United States v. Gonsalves*, 121 F.3d 1416, 1419 (11th Cir. 1997) (citation omitted). "The substantial assistance regime is not a spoils system designed simply to reward a

cooperative defendant; it is designed to benefit the government in its prosecution efforts." *United States v. Orozco*, 160 F.3d 1309, 1315 (11ᵗʰ Cir. 1998), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000). A defendant's disappointment that his cooperation did not rise to the level of substantial assistance does not alone warrant a finding that the motion should have been filed.

The record contains a letter from Brian Lang to his client detailing Lang's concerns about defendant's lack of cooperation. This letter reflects that after defendant entered his plea on October 5, 2005, attorney Brian Lang "immediately" set up a meeting with the DEA and other law enforcement agents so the defendant could be interviewed and potentially receive some benefit from cooperating with law enforcement. (Doc. 527, exh. B5).[10] Defendant refused to speak to law enforcement without the presence of attorney Martin Regan, whom he claimed to have retained. (*Id.*). DEA agents phoned Mr. Regan to advise him that they would not meet with him unless and until he filed a notice of appearance in defendant's case. (*Id.*). Mr. Lang notes in his letter to the defendant that he did not hear from the defendant or his fiancee during the following week, and when he met with the defendant on October 18, 2005 at the jail, defendant advised that his parents had retained another attorney and defendant would be meeting with law enforcement on Friday October 21, 2005. Defendant assured counsel that he would confirm he had another attorney by Thursday October 20, 2005. No notice of appearance was filed, and on October 25, 2005, counsel authored the letter to the defendant expressing concern that the defendant was missing his opportunity to secure a 5K1 because he was not cooperating with law enforcement. Counsel told the defendant:

> More people are being arrested and every day that you wait to be interviewed by law enforcement is a day lost that you may be able to provide substantial assistance.

---

[10]This interview may have taken place the same day that the defendant entered his plea, but in any event from the context of counsel's letter it was no more than two days later.

If you have another attorney, he needs to immediately file a Notice of Appearance and get the ball rolling. If you do not have another attorney, you need to allow me to set up a meeting so that you can be interviewed and establish your cooperation as soon as possible.

(Doc. 527, exh. B5 at 2).

There is nothing further in Mr. Lang's affidavit or the government's response to indicate what happened after that time, except that Ms. Ferry entered her Notice of Appearance on November 21, 2005 and one week after that, Mr. Lang moved to withdraw. (Doc. 189, 193).

Even without the letter from former counsel Lang defendant has not established either that the government's failure to file a 5K1 motion was motivated by constitutionally improper reasons. Defendant has also failed to show that Nicole Ferry was constitutionally ineffective for her failure to raise or pursue this claim.

### Ground Seven

Finally, defendant asserts that the cumulative effect of the above-listed errors resulted in a violation of his Fifth and Sixth Amendment rights. He offers the concession that taken individually, any one of the individual claims might establish deficient performance but not prejudice under *Strickland*, but argues that taken together the errors require that his conviction be set aside.

Defendant also raises a claim of cumulative error. It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. See, e.g., *U.S. v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005); *United State v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)(citing *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984)); *United States v. Adams*, 74 F.3d 1093,1099 (11th Cir. 1996); *United States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995). However, "[a] defendant is entitled to a fair trial not a perfect one." *Ramirez*, 426 F.3d at 1353 (quoting *United States v.*

*Adams,* 74 F.3d 1093, 1099-1100 (11th Cir. 1996) (citing *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953))). The cumulative error doctrine is inapplicable where the district court commits no individual errors. *United States v. Waldon* 363 F.3d 1103, 1110 (11th Cir. 2004). The cumulative error doctrine can be applied when a defendant has entered a guilty plea. See, e.g, *United States v. Lee*, 268 Fed.Appx.813, 817 (11th Cir. 2008). The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim. However, the Supreme Court has held, in the context of such a claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (cited in *Forest v. Florida Department Corrections*, 342 Fed. Appx. 560, 564-565 (11th Cir. 2009)).

Based on the analysis contained in the entire recommendation, the court finds that there has been no error, individually or collectively, that violated the defendant's constitutional rights. There is no basis for relief under 28 U.S.C. § 2255.

## III. Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing)

(citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 516)  be DENIED, and no certificate of appealability should issue.

At Pensacola, Florida, this 12th day of November, 2010.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).